UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:02-CR-133(01)RM |
| | ) | |
| ANTHONY LYONS | ) | |

## OPINION AND ORDER

The United States seeks review of the magistrate judge's determination that probable cause did not exist to hold Anthony Lyons on a petition to revoke his supervised release and of the magistrate judge's consequent dismissal of that petition. For the reasons that follow, the court leaves the magistrate judge's order undisturbed.

The July 29 petition to revoke Mr. Lyons's supervised release alleged that Mr. Lyons had committed another crime—domestic violence battery, a Class D felony, IND. CODE 35-42-2-1(2)(m), and battery, a Class D felony, IND. CODE 35-42-2-1.3—upon his wife Angela on July 3. The State of Indiana had charged him with those crimes on July 5. The State eventually dismissed its charges when Mrs. Lyons recanted. The government moved for Mr. Lyons's detention at his federal initial hearing, triggering the process set forth in Federal Rule of Criminal Procedure 32.1(b). The magistrate judge conducted the preliminary hearing and detention hearing on August 7.

The government presented the testimony of United States Probation Officer William Montgomery and a photocopy of the police report of the July 3 incident

prepared by South Bend police officer Jason Stone. Mr. Lyons presented the testimony of alleged victim Angela Lyons. Mrs. Lyons denied that Mr. Lyons had struck her. During closing argument, the government requested a continuance so that it could call the police officer and present photographs the officer had taken on July 3. The magistrate judge denied the continuance motion and, the following day (August 8), issued an opinion finding no probable cause and dismissing the petition to revoke supervised release.

On August 11, the government filed its motion for reconsideration and for an order setting a hearing date on its petition to revoke supervised release. This court heard argument on that motion on September 5.

The case's procedural setting presents the first challenge. Despite the motion's title, the government doesn't seek reconsideration in the traditional sense because its motion isn't directed to the magistrate judge. The motion is directed to the district judge. At oral argument on the reconsideration motion, the court asked the government what standard of review governs the proceeding. The government conceded that it hadn't been able to find any authority for any standard of review other than clear error. Neither has the court found any such authority. Accordingly, the court approaches its task by inquiring whether the magistrate judge committed clear error in his ruling. "Clear error is an extremely deferential standard of review, and will only be found to exist where the 'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" <u>Pinkston v. Madry</u>, 440 F.3d 879, 888 (7th Cir.

2006) (*quoting* <u>Anderson v. City of Bessemer</u>, 470 U.S. 564, 573 (1985)). That standard makes the government's task in this case nearly insuperable.

The government contends the magistrate judge misunderstood and misapplied the law defining probable cause and the law governing competency of child witnesses and present sense impression statements. The government also contends the magistrate judge erred by saying the police officer's report was not under oath and in saying the report was uncorroborated. The government contends, too, that the magistrate erred by denying the government's motion for a continuance to present additional evidence. Finally, the government contends that it has enough evidence, should this court hold an evidentiary hearing, to prove the supervised release violation by a preponderance of the evidence.

The government notes that at the preliminary hearing, the magistrate judge invited each side to define probable cause and to compare it to the preponderance of the evidence standard that would govern the ultimate determination before the sentencing judge. Each side proffered a definition; the government believes Mr. Lyons's counsel mis-stated the standard. The magistrate judge's questions contain no misstatements about the meaning of probable cause. The government followed up with a brief later in the day of the hearing. The magistrate judge's written order, issued the following day, cited none of the government's cases (or Mr. Lyons's counsel's attempted definition), but rather quoted from <u>Maryland v. Pringle</u>, 540 U.S. 366 (2003).

Perhaps an eight-year veteran magistrate judge forgot the definition of probable cause, not only during a hearing during a busy court calendar, but on through the time of his entry the next day of a seven-page opinion containing independent research that disclosed Supreme Court discussion of the issue. This sequence of events doesn't establish that remarkable proposition, especially under a clear error standard of review.

The government's contention that the magistrate judge misapprehended Federal Rule of Evidence 601 finds a hint of support in the record. During the hearing, the magistrate judge expressed concern that the Lyonses' six-year-old daughter, who made a statement to the investigating officer, would not be a competent witness. As the government points out, such an assumption would be incorrect on a number of levels. *See, e.g.*, <u>Walters v. McCormick</u>, 122 F.3d 1172, 1176 (9th Cir. 1997). But the government explained the law correctly at the hearing, and nothing in the magistrate judge's written opinion suggests that any mistaken thoughts of child witness incompetency infected the eventual ruling. The magistrate judge wrote that no weight was given to the child's statement because of her age, her emotional state, and the inherent hearsay nature of the report of her statement. Even if an inaccurate recollection of the law sidetracked the magistrate judge at the preliminary injunction hearing, the record contains no indication that the ruling was affected.

The government also takes the magistrate judge to task for not agreeing that the present sense impression exception to the hearsay rule, FED. R. EVID. 803(1),

4

covered the statements Angela Lyons and her daughter made to Officer Stone on July 3. This court can find no error on this point. First, the magistrate judge's opinion correctly notes that the rules of evidence don't apply in preliminary hearings, so whether the statements fit within a hearsay exception would matter only as an academic exercise. Second, timing is the key to admissibility under the present sense impression hearsay exception: the statement must have been made during or "immediately after" the event described. *See* <u>Schindler v. Seiler</u>, 474 F.3d 1008, 1011 (7th Cir. 2007); <u>United States v. Woods</u>, 301 F.3d 556, 562 (7th Cir. 2002); <u>United States v. Ruiz</u>, 349 F.3d 643, 646-647 (7th Cir. 2001); <u>United States v. Santos</u>, 201 F.3d 953, 963-964 (7th Cir. 2000). The police report doesn't indicate how soon after the incident the statements were made to Officer Stone. The magistrate judge asked about the timing at the hearing, and the government speculated that the statements had to have been made immediately afterward. Assuming Officer Stone took more than a matter of seconds to respond to the call, the record supports the proposition that the statements were not made immediately afterward. *See* Advisory Committee's Note to Rules 803(1) and (2) ("[I]n many, if not most, instances precise contemporaneity is not possible, and hence a slight lapse is allowable.").

Finally, even if the statements had been expressly admitted as present sense impressions, it would not amount to clear error for the magistrate judge to give the statements little weight. *See* <u>Lust v. Sealy, Inc.</u>, 383 F.3d 580, 588 (7th Cir. 2004) ("The rationale for these exceptions is that spontaneous utterances, especially in

emotional circumstances, are unlikely to be fabricated, because fabrication requires an opportunity for conscious reflection. As with much of the folk psychology of evidence, it is difficult to take this rationale entirely seriously, since people are entirely capable of spontaneous lies in emotional circumstances. Old and new studies agree that less than one second is required to fabricate a lie. It is time the law began paying attention to such studies." (internal quotations and citations omitted)).

The government argues that the magistrate judge was simply wrong about the police report being under oath. The magistrate judge wrote, in footnote 2 to the opinion, "The United States argues that the police report is under oath but a close examination of Government exhibit 1, does not reveal anything to show it was made under oath or subject to the pains and penalties of perjury." In support of its argument, the government attaches a copy of the police report that quite clearly states, in a bar above the officer's electronic signature: "I AFFIRM, UNDER THE PAINS AND PENALTIES OF PERJURY, THAT THE AFOREMENTIONED FACTS ARE TRUE AND CORRECT AS PRESENTED TO AND/OR OBSERVED BY ME."

The document attached to the government's brief is neither the exhibit introduced at the probable cause hearing nor a photocopy of that exhibit. What was admitted at the probable cause was a different, apparently poorer, photocopy of the original police report on which the writing in the bar above the officer's electronic signature is completely illegible; indeed, only a reader who has seen the

original would venture that the marks on the bar are letters. The magistrate judge reviewed the exhibit admitted at the hearing; it cannot be clear error for the magistrate judge not to have discerned what was not included in the exhibit.

The government also objects to the magistrate judge's description of the police report as "uncorroborated." The government says that two neighbors' statements (also contained in the police report) corroborated the six-year-old's statement at the scene and that Angela Lyons's testimony at the preliminary hearing corroborates much of what was in the police report.

The government is correct that those statements were corroborated in some respects, perhaps in important respects. But none of the corroboration went to the central point of the proceedings: neither neighbor reported seeing Mr. Lyons strike or elbow his wife in the eye, and Angela Lyons specifically denied that Mr. Lyons did so. If one discounts the statements of the crying six-year-old, as the magistrate judge was entitled to do, the police report (more accurately, the statement attributed to Angela Lyons in the report) is uncorroborated on the factual issue as to whether Mr. Lyons intentionally struck his wife.

To agree with the government's argument that the magistrate judge erred in his findings would require a holding that a court commits clear error by crediting the in-court testimony of an eyewitness who swears that the alleged conduct didn't occur. This court cannot make such a holding.

The government also raises a procedural challenge. It says that had the magistrate judge granted its motion for a continuance, it could have presented the

testimony of Officer Stone and the neighbors, as well as the photographs Officer Stone took of Angela Lyons's eye that evening. The government says (and the defense agrees) that it didn't know before the hearing that Angela Lyons would appear and testify. The government says the magistrate judge should have granted a brief continuance of one day to allow the government to meet Mrs. Lyons's testimony.

The government's motion, though, wasn't made upon learning Mrs. Lyons was going to testify or even after hearing what she had to say. The government had rested its evidence, declined the magistrate judge's offer to allow rebuttal evidence, and begun its final argument. When the magistrate judge's questions made it apparent that the government's evidence hadn't persuaded the magistrate judge, the government requested a continuance (and impliedly sought leave to re-open the evidence). The magistrate judge originally seemed amenable to the idea, but Mr. Lyons—who had, after all, been in custody for about five weeks—objected, and the court sustained his objection.

To show clear error in the denial of a continuance is a formidable task under ordinary circumstances. To show clear error in denial of a continuance that would require a defendant to spend another night in jail, after state prosecuting authorities have decided to abandon their prosecution and it appears to the presiding judicial officer that the government's proof is too weak, is even more formidable. To show clear error in the denial of such a motion for continuance that was not made until after the government had decided to go forward with its

case despite the presence of an unexpected defense witness, after the government had rested its case, after the government had declined to present rebuttal evidence (or to seek a continuance before declining rebuttal), and after the government had nearly completed its final argument, is an insurmountable task.

Finding no clear error either in the magistrate judge's ruling on the question of probable cause to find a violation of Mr. Lyons's supervised release or in the magistrate judge's denial of the government's motion for continuance, the court DENIES the government 's motion for reconsideration [docket # 75].

SO ORDERED.

ENTERED:    September 17, 2008

                    /s/ Robert L. Miller, Jr.
                    Chief Judge
                    United States District Court